IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARIA LUISA CUELLAR SANTILLAN,<br><br>Defendant. | §<br>§<br>§<br>§  CRIMINAL NO.  EP-20-CR-0582-DCG<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

**UNITED STATES' TRIAL BRIEF AND CASE SUMMARY**

The United States of America, by and through its United States Attorney for the Western District of Texas and the undersigned Assistant United States Attorney, hereby files this, its Trial Brief and Case Summary, for the Court's consideration in advance of jury selection and trial in the above-captioned case.

## I.  FACTS

The United States anticipates introducing the following facts at the March 31, 2022, bench trial of Defendant Maria Luisa Cuellar Santillan (hereinafter "Defendant"):

Defendant was employed by MAB Auto LLC ("MAB"), an auto salvage company, from approximately 1994 through mid-July of 2016. She was the sole employee who handled the finances of the company. As part of her employment with the MAB, Defendant's responsibilities included, but were not limited to, making bank deposits into MAB's bank accounts and writing checks for payment to vendors and for payroll. Defendant routinely provided MAB's accounting firm with the MAB's monthly bank statements, images of cancelled checks and other financial documents to facilitate the accountant's bookkeeping and tax responsibilities for MAB.

Defendant also owned several small businesses in El Paso, Texas. Her primary business was Petrita Enterprises, LLC, ("Petrita") doing business as MLC Auto Sales ("MLC Auto"), a used car sales lot which was located across the street from MAB.

From 2012 through 2014, Defendant embezzled over $1 million from MAB. Defendant would write checks from MAB to herself and to MLC Auto. She would then cash or deposit this checks and obtain money from MAB. Every month, she would receive bank statements from MAB's bank in her capacity as office manager for MAB. To conceal her theft, Defendant would make copies of these bank statements, white out the names on the checks she had written for her benefit, and fraudulently substitute the name of an MAB vendor on said checks. She provided the doctored bank records to MAB's bookkeeper, who would use them to compile MAB's books.

On her tax returns, Defendant failed to report as income any of the embezzled funds. She wholly omitted checks she wrote to herself personally, and falsely reported checks she wrote to MLC Auto as "gross sales" from that business. These omissions and misrepresentations were material and resulted in a tax loss to the Government.

## II. INDICTMENT

Defendant is charged in with three counts of Federal Income Tax Fraud, in violation of 26 U.S.C. § 7206(2). These counts allege that on or about February 28, 2014, October 15, 2014, and October 15, 2015, respectively, in the Western District of Texas, Defendant violated 26 U.S.C. § 7206(2) by providing false information to her tax preparer, which information significantly under-reported her actual income for each charged tax year, and such false and fraudulent reporting resulted in a loss to the U.S. Government.

Title 26 U.S.C. § 7206(2) makes it a felony if any person "willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any

matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document."

To prove that Defendant is guilty of violating § 7206(2), the United States is required to show beyond a reasonable doubt that: (a) Defendant aided in, assisted in, procured, counseled, or advised the preparation and presentation of her own U.S. Individual Income Tax Return, Form 1040, a document arising under the internal revenue laws; (b) this Form 1040 falsely and fraudulently failed to report as income (i) $435,047.53 during the year 2012; (ii) $475,609.22 during the year 2013; and (iii) $521,522.18 during the year 2014; (c) Defendant knew that the Form 1040 was false and fraudulent; (d) the omission was material; and (e) Defendant acted willfully, that is, with intent to violate a known legal duty.  *See* Fifth Circuit Pattern Jury Instruction § 2.104B (2019) (citing *United States v. Chon*, 713 F. 3d 812, 820–21 (5th Cir. 2013); *United States v. Mudekunye*, 646 F.3d 281, 286 (5th Cir. 2011); *United States v. Clark*, 577 F.3d 273, 285 (5th Cir. 2009); *United States v. Clark*, 139 F.3d 485, 489 (5th Cir. 1998); *United States v. Coveney*, 995 F.2d 578, 588 (5th Cir. 1993)).

**1. Embezzled Income is Income as A Matter of Law.**

The term "gross income", as used in the federal tax system, means all income from whatever source unless it is specifically excluded by law. *See* 26 U.S.C. § 61(a); 26 U.S.C. §§ 101-140. The law allows exemptions from income taxes for funds acquired from certain sources. 26 U.S.C. §§ 101-140. Loans and gifts are excluded as income under the law. 26 U.S.C. § 102; *Moore v. United States*, 412 F.2d 974, 978 (5th Cir. 1969)(stating "loans do not constitute income" because of the obligation to repay them).

Embezzled funds or funds obtained through fraud constitute taxable income to the recipient. *See Rutkin v. United States*, 343 U.S. 130, 137 (1952) ("An unlawful gain, as well as a lawful one, constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily recognizable economic value from it."). The funds are considered to be income in the year of embezzlement or when obtained by fraud. *See Moore*, 412 F.2d at 978 (citing *James v. United States*, 366 U.S. 213, 219-21 (1961)). Notably, embezzled funds are not converted into a non-taxable loan simply because the embezzler has an intent to repay the stolen money. *Id.* (citing *James*, 366 U.S. at 219).

2. **Willfulness is Typically Proved by Circumstantial Evidence, Such as Withholding Information from a Tax Preparer or Accountant, Background of the Defendant, and Evidence Income Was Illegal.**

To show Defendant acted willfully, the Government must show Defendant voluntarily and intentionally violated a known legal duty. *Cheek v. United States*, 498 U.S. 192, 200 (1991). In other words, the Government must establish that a defendant was aware of his or her obligations under the tax laws. *E.g.*, *United States v. Bishop*, 264 F.3d 535, 546 (5th Cir. 2001).

The standard is a subjective one, and a defendant asserting a good faith defense is not required to have been objectively reasonable in their misunderstanding of their legal duties. *Cheek*, 498 U.S. at 202-03; *United States v. Whiteside*, 810 F.2d 1306, 1311 (5th Cir. 1987) (noting, however, the a "disagreement with the law is not a defense"). The factfinder may, however, "consider the reasonableness of the defendant's asserted beliefs in determining whether the belief was honestly or genuinely held." *United States v. Grunewald*, 987 F.2d 531, 536 (8th Cir. 1993); *see also Cheek*, 498 U.S. at 204 ("Of course, the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with

known legal duties imposed by the tax laws and will find that the Government has carried its burden of proving knowledge.").

Because direct evidence of willfulness is rarely available, it may be shown through circumstantial evidence and can be inferred from the taxpayer's acts or conduct. *E.g.*, *United States v. Bishop*, 264 F.3d 535, 545-46, 550-52 (5th Cir. 2001). Once the evidence establishes that a tax evasion motive played any role in a taxpayer's conduct, willfulness can be inferred from that conduct, even if the conduct also served another purpose, such as concealment of another crime. *See Spies v. United States*, 317 U.S. 492, 499 (1943).

In *Spies*, when discussing a similar tax law,[1] the Supreme Court noted that willfulness may be proven by various methods. "By way of illustration, and not by way of limitation," the Court opined that "affirmative willful attempt may be inferred from conduct such as keeping a double set of books, making false entries of alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal." *Id.* In *Bishop*, the Fifth Circuit echoed *Spies* and rejected the defense's motion for directed verdict, writing that:

> a wide range of conduct can support a finding of willful attempt to evade taxation, for instance: keeping a double set of books, making false entries or alterations, creating false invoices or documents, destroying books or records, concealing assets or covering up sources of income, handling one's affairs to avoid making the records normally accompanying transactions of a particular kind, any conduct likely to mislead or conceal, holding assets in others' names, providing false explanations, giving inconsistent statements to government agents, failing to report a substantial amount of income, a consistent pattern of underreporting large amounts of income, or spending large amounts of cash that cannot be reconciled with the amount of reported income.

---

[1] "Willfully" has the same meaning across multiple tax statutes. *See generally Cheek v. United States,* 498 U.S. 192, 200 (1991); *United States v. Bishop*, 412 U.S. 346 (1973); United States v. Guidry, 199 F.3d 1150, 1156 (10th Cir. 1999).

5

*Bishop*, 264 F.3d at 550 (citing *United States v. Chesson*, 933 F.2d 298, 304 (5th Cir. 1991); *United States v. Kim*, 884 F.2d 189, 192 (5th Cir. 1989); *United States v. Calles*, 482 F.2d 1155, 1159–60 (5th Cir.1973)). Courts in the Fifth Circuit have routinely pointed to these categories of proof as evidence of willfulness:

- **Consistent patterns of underreporting large amounts of income**. *United States v. Kim*, 884 F.2d 189, 192-93 (5th Cir. 1989) (evidence of willfulness was sufficient where taxpayer, inter alia, failed to report $182,601 of income over three years); *United States v. Bishop*, 264 F.3d 535, 552 (5th Cir. 2001) (pointing to defendant's "failure to file timely returns, and the large sums of money involved"); *United States v. Daniels*, 617 F.2d 146, 148, 150 (5th Cir. 1980) (citing *United States v. Burrell*, 505 F.2d 904, 911 (5th Cir. 1974); *United States v. Tunnell*, 481 F.2d 149 (5th Cir. 1973)) ("A consistent pattern of understatement has been held to present a jury question as to willfulness . . ."). *See also United States v. Smith*, 890 F.2d 711, 715 (5th Cir. 1989) (stating taxpayer filed "a return reflecting a negative income in excess of $10,000 when in truth and in fact the proper income experienced by the taxpayer exceeded $88,000. That error is so egregious, when considered in the light of taxpayer's acumen as an entrepreneur, as to fulfill the government's duty to prove willfulness.").[2]

- **Providing accountant or return preparer with inaccurate and incomplete information**. *Bishop*, 264 F.3d at 552 (defendant failed to tell his tax return preparer about business income he deposited into his personal account); *United States v.*

---

[2] *See also United States v. Holovachka*, 314 F.2d 345, 357 (7th Cir. 1963) (citing *Holland v. United States*, 348 U.S. 121, 139 (1954) (noting the Supreme Court has upheld convictions when there "was evidence of a consistent pattern of underreporting large amounts of income, and of the failure on petitioners' part to include all of their income in their books and records.").

6

*Daniels*, 617 F.2d 146, 148, 150 (5th Cir. 1980); *United States v. Chesson*, 933 F.2d 298, 305 (5th Cir. 1991); *Kim*, 884 F.2d at 193 ("Giving false information to an accountant bears on intent to evade and defeat the payment of taxes.").[3]

- **False statements to agents.** *United States v. Chesson*, 933 F.2d 298, 304 (5th Cir. 1991); *United States v. Calles*, 482 F.2d 1155, 1159–60 (5th Cir.1973).[4]

- **Keeping a double set of books.** *Bishop*, 264 F.3d at 550; *Daniels*, 617 F.2d 146, 148, 150.

- **Making or using false documents, false entries in books and records, false invoices, and the like.** *Bishop*, 264 F.3d at 550; *Chesson*, 933 F.2d at 304.[5]

- **Extensive use of currency or cashier's checks.** *Daniel*, 956 F.2d at 542 (defendant "used cash extensively, even converting checks to cash immediately," and paid employees and insurance policies in cash).

- **Spending large amounts of cash which could not be reconciled with the amount of income reported**. *Bishop*, 264 F.3d 535, 550 (5th Cir. 2001); *Kim*, 884 F.2d at 192 (5th Cir. 1989) (stating defendants "appear to have known that they had earned far more than they reported. Their extensive real estate purchases were well out of line with their reported income.").

---

[3] *See also United States v. Garavaglia*, 566 F.2d 1056, 1057-60 (6th Cir. 1977) (stating a "taxpayer who relies on others to keep his records and prepare his tax returns may not withhold information from those persons relative to taxable events and then escape responsibility for the false tax returns which result" and "[a] taxpayer who keeps no regular books but relies on his bank records to reflect his income engages in a deceptive practice when he fails to deposit payments from business customers").

[4] *See also United States v. Callanan*, 450 F.2d 145, 150 (4th Cir. 1971) ("Guilty knowledge and willfulness may be inferred from the handling of one's affairs to avoid making the record usual in transactions of the kind . . . from false explanations, and from a pattern of concealment of true income from one's accountant.").

[5] *See also United States v. Wilson*, 118 F.3d 228, 236 (4th Cir. 1997) (The jury may infer a 'willful attempt' from 'any conduct having the likely effect of misleading or concealing.'").

- **Background and experience of defendant.** *Smith*, 890 F.2d at 715 (defendant's background as an entrepreneur probative of willfulness).[6]

- **Illegal sources of income.** *United States v. Palmer*, 809 F.2d 1504, 1505-06 (11th Cir. 1987) ("From the illegal source of funds, a jury could reasonably infer an intent to conceal income").

### III.    LEGAL AND EVIDENTIARY ISSUES

**A.    Federal Rule of Civil Procedure 29.**

The Government anticipates Defendant will make a motion under Federal Rule of Criminal Procedure 29(a) at the close of Government's evidence.  Rule 29 of the Federal Rules of Criminal Procedure states that, following a motion by the defendant at the closing of the government's case, a court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."   FED. R. CRIM. P. 29(a).

In deciding a motion brought under Rule 29, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Robinson*, No. 3:19-CR-99, 2019 WL 7474285, at *1 (N.D. Miss. Dec. 27, 2019) (citing *United States v. Daniels*, 930 F.3d 393, 402 (5th Cir. 2019)) (emphasis in original). "[T]he evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *United States v. Rodriguez-Garcia*, 657 F. App'x 252, 254 (5th Cir. 2016) (citing *United States v. Lankford*, 196 F.3d 563, 575 (5th Cir. 1999)). When considering the sufficiency of the evidence, the court "must afford the government the benefit of all reasonable

---

[6] *See also United States v. Guidry*, 199 F.3d 1150, 1157-58 (10th Cir. 1999) (considering defendant's expertise in accounting from her business degree and her work as comptroller of a company); *United States v. MacKenzie*, 777 F.2d 811, 818 (2d Cir. 1985) (considering the fact each defendant had a college degree, one in economics and the other in business).

inferences and credibility choices." *United States v. Aggarwal*, 17 F.3d 737, 740 (5th Cir. 1994); *see also United States v. Burns*, 597 F.2d 939, 940–41 (5th Cir. 1979) ("All reasonable inferences which tend to support the Government's case must be accepted. Any conflicts in the evidence must be resolved in the Government's favor." (citations omitted)).

    **B.**    **Self-Serving Hearsay is Inadmissible**

The Government anticipates that defense counsel may attempt to elicit testimony on cross-examination about statements Defendant to Government witnesses. Such testimony would be inadmissible hearsay.

The Government is allowed to put on evidence of a defendant's prior statements to law enforcement because such statements, when offered by the Government, are not hearsay. FED. R. EVID. 801(d)(2). However, if defense counsel attempts to elicit a defendant's prior statements from a Government witness on cross-examination, those statements are no longer "offered against an opposing party" and are therefore inadmissible hearsay. *See id.*; *United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (defendant could not introduce non-self-inculpatory statements because they were inadmissible hearsay); *United States v. Marin,* 669 F.2d 73, 84 (2nd Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."); *United States v. Vasquez*, 677 F.3d 685, 691 (5th Cir. 2012) (noting trial court sustained prosecutor's objection to defense counsel's attempt to elicit testimony from Special Agent concerning defendant's statements to Special Agent).

    **C.**    **Standard for Admissibility of Expert Testimony Under Fed. R. Evid. 702.**

Admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific,

technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court of the United States offered four factors to guide a trial court in assessing the admissibility of expert testimony: (1) whether the opinion at issue can be tested; (2) whether it has been peer-reviewed; (3) the rate of known or potential error; and (4) general acceptance within the scientific community. 509 U.S. 579, 593–94 (1993). These factors are "neither exclusive nor dispositive because 'the inquiry envisioned by Rule 702 is ... a flexible one.'" *United States v. Slough*, 22 F. Supp. 3d 25, 28 (D.D.C. 2014).

The United States filed its notice of intent to introduce the expert testimony of a United States Internal Revenue Service Special Agent on March 15, 2021. (ECF No. 89.) Such testimony is common in cases like this and will usually meet the standards of Rule 702 and *Daubert*. See *United States v. Moore*, 997 F.2d 55, 58 (5th Cir. 1993).

G.   **Admissibility of Charts and Summaries of Bank Records.**

The United States plans to introduce bank records into evidence at the trial of the above-captioned case. The records are voluminous and contain many transactions during a three-year period, many of which are not relevant to the instant case. To help parse the relevant transactions and present them to the Court in an understandable form, the United States plans to introduce summary charts in accordance with FED. R. EVID.1006.

"A summary chart that meets the requirements of Rule 1006 is itself evidence . . ." *United States v. Williams*, 264 F.3d 561, 575 (5th Cir. 2001) (citing *United States v. Smyth*, 556 F.2d 1179, 1184 (5th Cir. 1977)). "Rule 1006 allows admission of summaries when (1) the evidence previously admitted is voluminous, and (2) review by the jury would be inconvenient." *United States v. Whitfield*, 590 F.3d 325, 364 (5th Cir. 2009) (quoting *United States v. Bishop*, 264 F.3d

10

535, 547 (5th Cir. 2001)). The individual who actually prepared the charts need not testify if the testifying witness can state that he adopts the chart or that the chart was made at his direction. *See United States v. Fahnbulleh*, 752 F.3d 470, 479 (D.C. Cir. 2014) (citing *United States v. Lemire*, 720 F.2d 1327, 1349 (D.C.Cir.1983)); *Colon-Fontanez v. Municipality of San Juan*, 660 F.3d 17, 31 (1st Cir. 2011) (quoting *United States v. Bray*, 139 F.3d 1104, 1110 (6th Cir. 1998)).

Admitting the summaries as evidence, rather than as a pedagogical aid under Rule 611, would diminish the chance that irrelevant information would be admitted into the records, since the United States need not introduce into evidence the underlying bank records upon which the summaries are based. *See United States v. Jones*, 664 F.3d 966, 976 (5th Cir. 2011) (citing *United States v. Valencia*, 600 F.3d 389, 417–18 (5th Cir. 2010)).[7]

                                      Respectfully submitted,

                                      ASHLEY C. HOFF
                                      UNITED STATES ATTORNEY

By:      /s/
                                      SHANE WAGMAN ROMERO
                                      Assistant U.S. Attorney
                                      California Bar #283503
                                      700 E. San Antonio, Suite 200
                                      El Paso, Texas 79901
                                      (915) 356-2250

---

[7] The Fifth Circuit previously stated in *United States v. Bishop*, 264 F.3d 535, 547 (5th Cir. 2001), that "Summary evidence must have an adequate foundation in evidence that is already admitted, and should be accompanied by a cautionary jury instruction." However, in *Valencia*, the Fifth Circuit apparently cut back on their "broad" ruling in *Bishop*, stating "*Bishop* is different because it concerned summaries of live testimony and exhibits presented in court . . . not voluminous records which 'cannot conveniently be examined in court. Therefore, despite its broad wording, *Bishop* did not mandate that the databases be admitted into evidence before Labhart could summarize their contents, as this would contravene the plain language and purposes of Rule 1006." *United States v. Valencia*, 600 F.3d 389, 417 (5th Cir. 2010) (citations omitted).

**CERTIFICATE OF SERVICE**

I hereby certify that on the 23rd day of March, 2022, a true and correct copy of the foregoing instrument was electronically filed with the Clerk of the Court using the CM/ECF System which will transmit notification of such filing to the following CM/ECF participant:

Counsel for the Defendant:
Mary Stillinger

_____/s/_____
Shane Wagman Romero
Assistant United States Attorney